**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

_____

CASE NO. 8:12-cr-00015-VMC-TBM
CASE NO. 8:07-cr-00195-VMC-EAJ

_____

**UNITED STATES OF AMERICA,**

        *Plaintiff,*

*vs.*

**LUIS FERNANDO CASTAÑO-ALZATE,**

        *Defendant.*

_____/

<u>DEFENDANT'S MEMORANDUM IN AID OF SENTENCING</u>

The defendant, **LUIS FERNANDO CASTAÑO-ALZATE**, by and through his undersigned counsel, respectfully requests this Court to impose a sentence that is "sufficient, but not greater than necessary" to achieve the sentencing purposes of 18 U.S.C. §3553(a) and respectfully files his Memorandum in Aid of Sentencing and states as follows:

**I.**

<u>PREFACE</u>

After years of mandatory sentencing guidelines, the Supreme Court has restored the traditional power of federal district court judges to impose individualized sentences that are not greater than necessary to satisfy the statutory purposes of sentencing. The federal district court

can now consider all of the characteristics of the offender, circumstances of the offense and reject

advisory guidelines.

## II.

## OBJECTIONS TO THE ADVISORY SENTENCING GUIDELINE COMPUTATION

The Defendant respectfully objects to the PSI, p.13, ¶ 42, which provides for a four level

adjustment for role in the offense.  Instead, the Defendant would respectfully suggest that a three

level increase is more appropriate.[1]

As a result of interviews with the Defendant and others the offense conduct of the

Defendant can be summarized as follows: In the 2007 case the Defendant acted as an

intermediary between a representative for a Mexican drug trafficker who wished to purchase a

large quantity of cocaine and the supplier of the cocaine, a cocaine lab operator.  He also

introduced the drug transporter who handled the actual transportation of the cocaine from

Colombia to Mexico.  In each case the Defendant earned a commission for his services as an

intermediary.  In the 2012 case he again acted as an intermediary between the same cocaine lab

operator and the cocaine exporter, Nelson Aristizabal-Martinez.  Again earning a commission on

the sale of the cocaine.  In both cases the Defendant did not have any decision making authority

nor command and control over his co-defendants.  Neither did he have a greater share of the

profits than his co-defendants.  However, in his role as an intermediary between the different co-

---

[1]        Previous counsel also objected to the two level increase for possession of a
firearm.  That objection is hereby withdrawn.

defendants in the conspiracy he exerted some managerial or supervisory duties and as such is deserving of a three role enhancement.

The Government does not oppose the proposed objection.

### III.

**THE DEFENDANT MERITS SENTENCING LENIENCY (WHETHER LABELED VARIANCE OR DEPARTURE) AS A CONSEQUENCE OF EXTRAORDINARY REHABILITATION, FAMILY CIRCUMSTANCES AND OTHER MATTERS**

**A.** <u>The Defendant's extraordinary acceptance of responsibility</u>

The Defendant was arrested on the instant charges on February 17th, 2009. On December 29th, 2010 he arrived in Tampa and had his initial appearance the following day. Within days he was being proffered by the Government and by mid-January he entered a plea of guilty. The next day he was flown to New York to be prepared as a Government witness. Upon his eventual return to the Middle District of Florida he promptly entered into a plea as to a case that had been transferred from the Southern District of Florida.

Previous to his extradition to the United States and thereafter the Defendant at all times evinced a desire to accept his responsibility, plead guilty to the offenses and cooperate with the Government. It is important to note that even before receiving any discovery in either case before the court, the defendant accepted responsibility and plead guilty in both cases. Also of special note is the defendant's continued substantial assistance to the government subsequent to the filing of the 5K1.1 motion. Despite the threats described above, the defendant was again prepared to testify and assisted the EDNY AUSA in preparation for a highly contested sentencing hearing that resulted in a sentence of 50 years. The defendant was also prepared to testify against Ramon Mohana, an AUC

commander. He provided detailed information against the Baez brothers and was prepared to testify against Claudio Baez.  He is continuing to provide information and assistance to the government when called upon.

This clearly demonstrates and establishes his extraordinary acceptance of responsibility.

B.      Assistance to the Government

Consistent with the Government's 5K1.1. submission to the Court the Defendant's assistance to the Government has been significant and extraordinary. Of greatest importance and significance is the Defendant's testimony at trial, in the Eastern District of New York, as a Government witness against Carlos Arturo Patiño Restrepo. Patiño Restrepo was not your average drug trafficker but instead controlled all of the drug trafficking in the La Virginia-Viterbo region of Colombia and was one of the leaders of the Northern Valley Cartel – Colombia's largest, most powerful and most violent drug cartel.  Evidence at trial established that Patiño Restrepo was responsible for sending at least one-hundred (100) tons of cocaine to the United States.  Moreover, evidence established that Patiño Restrepo bribed substantial a number of Colombian police officers, made substantial efforts to obstruct prosecution upon his arrest by threatening potential witnesses and bribing prison officials. He also sought to enlist the aid of fellow inmates to assist in killing potential witnesses.

Of course killing individuals who stood in his way was nothing new to Patiño Restrepo. It was established at trial that in order to maintain his leadership position in the Northern Valley Cartel, and to protect his cocaine trafficking operations, Patiño Restrepo employed violent measures. As a result, his control of the Colombian areas of Viterbo, parts of Pereira and La Virgina, was described as "absolute."  For example, Patiño Restrepo funded and used the assistance of the AUC, the

4

paramilitary organization in Colombia, to protect his drug routes, laboratories, and shipments. In addition, evidence at trial established that Patiño Restrepo ordered the killing of potential rivals and former associates and workers. He also killed land owners who refused to sell their lands to him. He also killed individuals who he thought had stolen from him and, most disturbingly, individuals who were providing information to the authorities about him. At one time, Patiño Restrepo arranged for the murder of a policeman and one of his own cousins, since he suspected that the two were talking to law enforcement about him. Patiño Restrepo ordered the murder of the wife of a conspirator who had previously been ordered killed by a fellow cartel leader. Patiño Restrepo suspected the wife of cooperating with the United States authorities and ordered her killed. At least one Government provided information from personal knowledge of between 120 and 130 murders committed on Patiño Restrepo's orders.

Patiño Restrepo's widespread involvement in the conspiracy culminated in his attempted bribery of a U.S. case agent and, failing that, his threat to kill both the case agent and the EDNY Assistant United States Attorney assigned to the case. Both of whom were assigned protection details as a result of the credible threats from Patiño Restrepo. The threat was so serious that the original EDNY AUSA assigned to the case was ultimately removed from the case.

Patiño Restrepo's first trial resulted in a mistrial. The Defendant was extradited subsequent to the first trial and shortly before the second trial commenced. With the trial scheduled to begin within less than a month of his arrival, the Defendant immediately agreed to be debriefed and have his change of plea hearing expedited. As such he did not request any discovery from the Government and immediately plead guilty. The day after his change of plea, the Defendant was flown directly

to New York to begin his preparations as a Government witness in the re-trial of Patiño Restrepo. He was called as a witness and testified at length. As indicated in the letter from the EDNY Assistant United States Attorney to the MDFL AUSA, the Defendant's testimony was particularly important because of his "face to face dealings with Patiño." His testimony corroborated the testimony of other witnesses and established that Patiño Restrepo was a boss in the Northen Valley Cartel. The AUSA in his letter described him as "a very good witness" and described his testimony as "instrumental in helping the government establish that Patiño was a cartel boss who sat at the top of a conspiracy to distribute tons of cocaine into the United States."

Finally, and unique to this Defendant amongst the other Government witnesses, the Government stated the following: "Some of Castaño's relatives still live in the same area of Colombia that Patiño once controlled. Consequently, the danger to Castaño and his family due to his willingness to testify against Patiño is very significant." Because of these significant threats to his safety and the safety of his family, the Defendant has been forced to relocate his family at his own expense.

In addition to this substantial assistance to the Government described above the Defendant has also provided additional assistance that will be described to the Court at sentencing.

His assistance to the Government has been timely, useful and significant and exposed the defendant, and his family, to a significant risk of danger.

6

C.    <u>Family Circumstances and Collateral Consequences of his Misconduct</u>

It is widely known in Colombia that the Defendant has cooperated with the Government. As a result, his family is in grave danger from either the individuals he used to work with. Mr. Castaño, therefore, has had to relocate his family for their safety.

As a result of this case he is also facing the forfeiture of all his assets in Colombia as well as the possibility of additional criminal charges upon his return. The properties being forfeited include his home and his farms. In sum, he has been completely financially and emotionally devastated.

IV.

<u>ANALYSIS OF SECTION 3553(A) SENTENCING FACTORS</u>

In summary, the Defendant respectfully invites consideration of the following analysis of the statutory sentencing factors.

A.    <u>Section 3553(a)(1):  the nature and circumstances of   the offense  and the history and characteristics of the defendant.</u>

1.    <u>The offense</u>.

With respect to the nature of the offense, Defendant recognizes that by his actions he promoted the commission of a crime. The Defendant was engaged in assisting the importation of narcotics into the United States. Such conduct is harmful to society and deserves punishment.

2.    <u>History and characteristics of the Defendant</u>.

Castaño is 42 years old. When he was 12 years old his father passed away after having suffered for years from stomach and esophageal cancer because they were too poor to obtain proper medical care. Shortly after his father's passing the Defendant, already having dropped out of

7

elementary school because of a lack of funds, was left to help support his mother and two siblings. Soon he fell into the main industry in the region – the production of cocaine.  For most of his life the Defendant has made a living the only way he knew how – by acting as the sales representative for a large cocaine lab operator.  Having said that he has been able to raise eight children none of whom have had any brushes with the law and all of whom have studied in one capacity or the other.

      **B.**    <u>Section 3553(a)(2):  the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; the need for deterrence.</u>

The offense is a serious one.  Drugs are harmful to society.  Any person who transgresses society's law by engaging in the drug trade, must face the consequence of his actions.  A sentence disproportionate to the seriousness of the offense does not promote respect for the law.  The prescribed guideline sentence for the offense (between 24 and 30 years) does not take into consideration factors previously argued, such as the Defendant's extraordinary acceptance of responsibility, his significant assistance to the Government, and the collateral consequences of his actions.

To promote respect for the law the punishment in this case should be less than prescribed by the sentencing guidelines.  A sentence of time served, both Defendant and counsel would submit, would not be appropriate.   A sentence that includes some further incarceration followed by supervised release would reflect the seriousness of the offense, promote respect for the law and provide just punishment as well as deterrence.

C.  **Section 3553(a)(2)(C):  the need to protect the public from further crimes of the defendant.**

As noted above, the Defendant readily agreed to plead guilty and has provided substantial assistance to the Government.  He has expressed a deep and sincere remorse for his previous activities.  It is highly unlikely that this 42 year old man would engage in future criminal activity.  All relevant factors point to a person capable of earning a livelihood through hard work.  This Defendant, therefore, should not be confined to incapacitate him.  It is most improbable that he will commit similar, or any offenses in the future.  There is no need for specific deterrence.

D.  **Section 3553(a)(6):  the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.**

The Defendant would only note that other defendants who were at the same level or higher than this Defendant have received very substantial sentencing reductions as a result of their testimony against Patiño Restrepo.  Angel Cabaliero-Caicedo received a 37 month sentence (as a result of a fifteen level reduction) although it should be noted that he also provided additional substantial assistance.  Likewise Olmes Duran-Ibarguen received a twelve level reduction to 70 months again largely as a result of his testimony against Patiño Restrepo in addition to some additional assistance. Jorge Ivan Gonzalez Ramirez, a violent and large scale drug boss in his own right, received a sentence of 60 months largely as a result of his testimony against Patiño Restrepo. Finally, Bayron Jimenez-Castaneda, the main AUC financial manager, received a 36 month sentence as a result of his testimony in the same case. The significant reductions that other Court's have granted largely based on the same assistance provided by this Defendant can certainly serve as a

guide in the instant case and certainly reflect the significance and importance with which the testimony against Patiño Restrepo has been treated by other Courts and prosecutors.

## V.

## CONCLUSION

The parsimony provision serves as the guidepost for sentencing decisions post-Booker. The parsimony provision requires the district court to impose the least severe sentence necessary to satisfy the four purposes of sentencing enumerated in the statute. The Defendant and his family appreciate the Court's consideration.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 15th day of October, 2012 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

Respectfully submitted,

**ROJAS & OLIVA, P.A.**
**Attorneys for the Defendant**
**Fountain Square**
**15800 Pines Boulevard**
**Suite 206**
**Pembroke Pines, Florida 33027**
**(305) 373-6868**
**ruben@rojasoliva.com**

By: R _____

RUBEN OLIVA, ESQ.
F.B.N. 626074

10